STATE IN THE INTEREST OF L. R.

STATE OF NEW JERSEY, COMPLAINANT-RESPONDENT, v.
L. R., JUVENILE-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 30, 1970—Decided December 7, 1970.

Before Judges GOLDMANN, LEONARD and MOUNTAIN.

Mr. *George Y. Sodowick* argued the cause for appellant (Mr. *Burton L. Eichler*, assigned attorney).

Mr. *Joseph A. Fusco*, Assistant Prosecutor, argued the cause for respondent (Mr. *Joseph P. Lordi*, Essex County Prosecutor, attorney).

The opinion of the court was delivered by

GOLDMANN, P. J. A. D.   L. R., a juvenile, was charged with violating *N. J. S. A.* 2A:170–31, the trespassing section of the Disorderly Persons Act, adjudicated a delinquent and committed to the New Jersey Youth Reception and Correction Center at Yardville. At the Juvenile and Domestic Relations Court hearing the judge also considered a complaint charging L. R. with malicious mischief, in violation of *N. J. S. A.* 2A:170–36. This appeal deals only with the first complaint, the juvenile maintaining that the proofs did not support a finding that he had violated the trespass statute.

*N. J. S. A.* 2A:170–31 reads:

Any person who trespasses on any lands * * * after being forbidden so to trespass by the owner, occupant, lessee or licensee thereof, or after public notice on the part of the owner, occupant, lessee or licensee forbidding such trespassing, which notice has been conspicuously posted adjacent to the highway bounding on such lands or adjacent to a usual entry way thereto, is a disorderly person * * *.

On October 13, 1968, a Sunday, L. R. was discovered by policemen sitting in an automobile located in the car lot owned by Ward Motors, on Central Avenue, East Orange. The lot was enclosed by a 10'-high fence with a foot of barbed wire on top. All the gates in the fence had been locked the previous night and were not opened that Sunday. Admittedly, there were no signs on the fence advising people to keep out. The police ordered L. R. to come to the fence,

and after he said he had climbed it to get into the lot, they ordered him to climb the fence and come out.

The question here, absent any posted notice, is whether the facts support an adjudication of delinquency under the first clause of the statute, which denotes it a violation for any person to trespass on lands after being forbidden to do so by the owner or occupant.

The Juvenile Court judge held that there was constructive notice of a prohibition against trespassing by reason of the nature of the fence, ingress being foreclosed because all the gates were locked. The juvenile claims that the judge adopted a strained construction of the statute which, being penal, should be strictly construed. A fence, he reasons, may serve many purposes, such as keeping something within a delineated area, segregating items, delineating boundaries, and to serve insurance purposes. Although L. R. was not expressly forbidden by Ward Motors from entering upon its premises, the high, barbed-wire, locked fence around the car lot served the obvious purpose of letting the public know that it was excluded. To adopt any other approach would require the owner or occupant of property to expressly forbid entrance to any person who, at a time when the lot was closed — for example, on a Sunday — might take it into his mind to climb the fence and, as the juvenile did here, attempt to operate one or more of the parked cars. The action taken by Ward Motors in enclosing its lot to protect its cars and property from outsiders during nonbusiness hours was indication enough that it forbade defendant's presence.

As was said in another setting, "Prevailing customs often determine whether a possessor of land is willing to have a third person come thereon." *Snyder v. I. Jay Realty Co.*, 30 *N. J.* 303, 312 (1959). They may be such that it is entirely reasonable for one to assume that his presence will not be tolerated unless he is told otherwise. Pragmatically, a fence of the type here involved, with all gates closed during nonbusiness hours — and particularly on a Sunday — is a custom so frequently adopted that any member of the public

would, without being told, know that he was not to trespass upon the premises unless he had specific and express permission from the owner or occupant so to do.

The adjudication is affirmed.